**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| AARON ADDISON, | : | CASE NO. 1:26cv00442 |
| **Petitioner**, | : | DISTRICT JUDGE<br>JEFFERY P. HOPKINS |
| v. | : | |
| CYNTHIA DAVIS,<br>WARDEN SOUTHERN OHIO<br>CORRECTIONAL FACILITY, | : | MAGISTRATE JUDGE<br>MICHAEL R. MERZ |
| | : | **HABEAS CORPUS** |
| **Respondent**. | : | |

**<u>RESPONDENT'S RETURN OF WRIT</u>**

## I. INTRODUCTION

Petitioner Aaron Addison, (hereinafter "Petitioner" or "Addison") inmate #A551556, filed a petition for writ of habeas corpus pursuant to 28 U.S.C. §2254. Respondent Cynthia Davis (hereinafter "Respondent") is the Warden of the Southern Ohio Correctional Facility, Lucasville, Ohio. As Warden, she maintains custody of Addison, pursuant to a Judgment Entry issued by the Cuyahoga County Court of Common Pleas, upon Addison's conviction of aggravated murder, attempted murder and having weapons while under disability. (Doc. 8, PageID#: 341). Respondent denies every ground for relief contained in the petition and submits it must be dismissed as follows.

## II. STATEMENT OF FACTS

The Court of Appeals, Eighth Appellate District, Cuyahoga County, Ohio, set forth the facts of this case. These binding factual findings "shall be presumed to be correct," and Addison has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. §2254(e)(1); *Warren v. Smith*, 161 F.3d 358, 360-61 (6th Cir. 1998):

[*P4] On a Saturday night in August 2006, codefendant Reginald Wilmore ("Wilmore") went to the apartment of Latrice Cromwell ("Latrice"), who lived in a Cleveland Metropolitan Housing Authority apartment. Latrice operated a "convenience store" out of her apartment, selling snack items, soft drinks and beer. Latrice and her boyfriend also sold cocaine and marijuana out of her "store." Wilmore wanted to buy a beer from Latrice, but she would not sell him any because she did not know him. Latrice's friend closed the door on Wilmore, so he angrily kicked the door. Latrice opened the door and Wilmore punched her, knocking a cell phone from her hand. A fight ensued, and Wilmore left when Latrice called police.

[*P5] Latrice testified that Wilmore returned with two other men, one of whom was holding a baseball bat. The two groups engaged in a "verbal battle" before Wilmore's group eventually left. Wilmore returned alone and apologized to Latrice. He asked whether she had found a key he claimed he had lost during the altercation. Latrice refused to return the key and told him she would give it to police. Wilmore told Latrice that "it's not over b***" and walked away.

[*P6] Latrice then called her boyfriend, Carlos Holder ("Holder"), to tell him about the fight. Holder and Latrice's cousin, Charles Cromwell ("Charles"), came to her apartment, joined by Holder's cousin. After hearing what happened, Holder called two more of his friends and asked them to come over. The four men went out to look for Wilmore, leaving Charles behind with Latrice.

[*P7] The four men came upon a small group of people that included Addison, whom they knew by the nickname "Wax," and Ricky Ogletree ("Ogletree"). Wilmore was not with the group. Ogletree testified that Holder pointed his finger at him, and started to say something when three other men came running up and started shooting. Ogletree testified that he ran and someone shot at him. Holder denied having a gun that evening but admitted that two of the men with him might have had guns. Holder claimed that some of the men in Addison's group also had guns.

[*P8] Latrice and her friend testified that they heard shooting just a few minutes after the four men left. Holder returned to the apartment, afraid that Addison and his friends were going to retaliate against him. He told the women to gather the children and go across the street to his aunt's house. They spent Sunday at a friend's house.

[*P9] On Sunday evening, Latrice and Holder returned to her apartment. Fearing that there would be trouble, Holder went to his aunt's house and got his gun.

[*P10] Another witness who lived near the shooting site testified that shortly

before the shooting, she had been walking to buy drugs when she saw Wilmore talking with two other men near Latrice's apartment. She testified that Wilmore was holding a shotgun. A few minutes later, the witness was walking back along the same route and saw Wilmore standing with four or five other men, one of whom she identified as Addison. Wilmore still carried the shotgun, and when she walked by them, she heard someone say, "What is we gonna do? She can get it too, let's make it happen." The witness kept walking, but before she could get to her apartment, she heard the sound of weapons discharging, including a shotgun and what sounded like "mild shots."

[*P11] Latrice testified that on the evening of the shooting, Addison came to her porch holding a shotgun. She testified that Addison told her to leave with her daughter and send Holder outside. Holder testified that Latrice came back inside the apartment and told him that Addison had threatened to shoot up the house and was outside with a shotgun. Charles was also in the apartment, asleep on the kitchen floor. Latrice awakened Charles and took her child into her bedroom.

[*P12] An upstairs neighbor overheard Latrice talking to two men. The neighbor testified that she heard one of the men tell Latrice that he was not trying to disrespect her but that they wanted Holder out of her house. The neighbor observed that the men each carried shotguns. The neighbor went down to Latrice's apartment and invited them to her apartment for safety. Moments later, the neighbor testified she heard gunshots and ran into the bedroom closet with Latrice.

[*P13] One of the gunshots hit Charles in the head, killing him. Holder went into the living room where Charles had been shot and fired out the window. A bullet grazed Holder in the shoulder.

[*P14] Latrice testified that she saw Addison's purple convertible leaving the scene at a fast rate. Ogletree testified that he saw Addison later that evening at a party, and Addison told him that "someone got shot."

[*P15] The police recovered five shell casings from a 9mm firearm outside the apartment, all of which were fired from the same weapon. No shotgun shells were recovered, but the police found a number of "defects" in the porch screen door and the brick wall surrounding the screen door. A police expert testified these defects were consistent with multiple projectile shotgun rounds. Other defects were located in the window frame that were also consistent with being shot from a shotgun. The expert further testified that he examined Holder's gun but, in his opinion, the fragment recovered from Charles's body could not have been fired from Holder's gun.

[*P16] The coroner testified that the bullet that struck the victim had traveled through his brain in a slightly downward trajectory. The coroner said the

trajectory of the bullet did not rule out the theory that it had been fired from outside the apartment.

[*P17] A police detective testified regarding three oral statements Addison made to police while in custody. Addison told detectives he was with friends the night before Charles was shot when Holder "and his boys ran up on them." Addison stated that one of the men with Holder asked him if he had a problem with Latrice and then began shooting at them. Addison also told police that he went to Latrice's the next night and spoke with her. He denied having a gun or shooting anyone. During his second oral statement, Addison told detectives that he had spoken with Wilmore in jail, and Wilmore had told him that a man named "Fiend" was the other shooter. Addison told detectives that Wilmore had the 9mm gun and "Fiend" had a shotgun. The detective testified that through his investigation he concluded that "Fiend" did not exist.

[*P18] The court sentenced Addison to life without the possibility of parole for aggravated murder, ten years for attempted murder, and five years for having a weapon while under a disability, with the sentences to be served concurrently.

(Doc. 8, PageID#: 499-503). *State v. Addison*, Ohio 8th Dist. No. CA-07-090642, 2009-Ohio-221, ¶¶4-18.

## III. **PROCEDURAL HISTORY**[1]

### A. State Conviction

On October 6, 2006, the Cuyahoga County Grand Jury indicted Addison with one count aggravated murder in violation of R.C. §2903.01(A)(Count 1), three counts attempted murder in violation of R.C. §2923.02/2923.02(A)(Counts 2-4) and one count having weapon while under disability in violation of R.C. 2923.13(A)(3)(Count 5). Count 1 contained mass murder and firearm specifications and Counts 2-4 carried firearm specifications. (Doc. 8, PageID#: 43-47). Counsel was appointed and Addison pled not guilty to all charges. New counsel was assigned two days later due to a conflict of interest. (Doc. 8, PageID#: 53).

[1] The docket sheets from Petitioner's Case are attached as Exhibits 119-124. Pursuant to Habeas Rule 5, Respondent has included the relevant transcript. In addition to what was filed, Addison's first trial resulted in a mistrial following jury deliberations. Respondent does not believe those transcripts are necessary for this Court's decision.

On October 16, 2006, Addison, through counsel, filed a motion for discovery and a bill of particulars. (Doc. 8, PageID#: 54-59). He also filed a motion for appointment of an investigator on October 23, 2006. (Doc. 8, PageID#: 60-61). On November 16, 2006, following a hearing, new counsel was substituted. (Doc. 8, PageID#: 62).

Addison, through counsel, filed a significant number of pretrial motions, including a demand for discovery. On December 13, 2006, the State filed the bill of particulars. (Doc. 8, PageID#: 259-263). On the same day, the court issued decisions on the numerous motions filed by Addison's counsel. (Doc. 8, PageID#: 264-290). The State issued its own demand for discovery as well as a response to discovery. (Doc. 8, PageID#: 291-318). Addison, through counsel filed a response to discovery. (Doc. 8, PageID#: 319-320).

On January 16, 2007, Addison, *pro se*, filed a motion to dismiss all felony charges for delay in preliminary hearings. (Doc. 8, PageID#: 321-323). Addison, *pro se*, also filed a motion for discharge due to delay. (Doc. 8, PageID#: 324-325).

Prior to trial, Addison, through counsel, filed a waiver of his right to a jury trial as to count 5 only. (Doc. 8, PageID#: 326). The State dismissed the mass murder specifications as to count 1. (Doc. 8, PageID#: 327).

On March 27, 2007, Addison, through counsel, filed a motion in limine to preclude the ballistics report as well as a motion to suppress eyewitness identification testimony and to voir dire any witnesses who made an identification of the defendant. (Doc. 8, PageID#: 328-333). On April 12, 2007, Addison's trial resulted in a mistrial following jury deliberation. (Doc. 8, PageID#: 334).

Addison, *pro se*, filed a motion to dismiss felony charges for delay of trial (Doc. 8, PageID#: 335-336) which the trial court denied. (Doc. 8, PageID#: 337). Prior to the second trial,

the parties stipulated to the previous waiver of right to a jury trial as to count 5. (Doc. 8, PageID#: 338).

The jury returned a verdict of guilty on counts 1-3 and not guilty as to count 4 and the related firearm specifications on counts 1-3. The court found Addison guilty as to count 5. (Doc. 8, PageID#: 339-340). Addison was sentenced to life without parole on count 1, 10 years on counts 2-3 and 5 years on count 5 with the sentences on counts 2, 3 and 5 all to run concurrent with each other. (Doc. 8, PageID#: 341).

**B. Direct Appeal**

On November 8, 2007, Addison, through new counsel, filed a notice of appeal to the Eighth District Court of Appeals, Cuyahoga County, Ohio. (Doc. 8, PageID#: 342). In his brief, Addison set forth the following four assignments of error:

> I. THE EVIDENCE WAS INSUFFICIENT TO SUPPORT THE CONVICTIONS FOR AGGRAVATED MURDER AND ATTEMPTED MURDER.
>
> II. THE APPELANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
>
> III. THE APPELLANT WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BY THE FAILURE OF DEFENSE COUNSEL TO REQUEST AN INSTRUCTION ON THE LESSER INCLUDED OFFENSE OF INVOLUNTARY MANSLAUGHTER.
>
> IV. THE TRIAL COURT ABUSED ITS DISCRETION BY SENTENCING THE APPELLANT TO A TERM OF LIFE WITHOUT THE POSSIBILITY OF PAROLE ON THE CHARGE OF AGGRAVATED MURDER.

(Doc. 8, PageID#: 389).

New counsel for Addison filed an appearance two months later along with a motion for leave to file additional assignments of error. (Doc. 8, PageID#: 428-431). The state appellate court granted the motion. (Doc. 8, PageID#: 432). In his additional brief, Addison raised the

following two additional assignments of error:

> V. THE TRIAL COURT ERRED AND VIOLATED APPELLANT'S RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS IN PERMITTING THE STATE TO INTRODUCE INADMISSIBLE HEARSAY EVIDENCE.
>
> VI. THE PROSECUTOR COMMITTED MISCONDUCT WHEN HE INTRODUCED AND ARGUED INCONSISTENT THEORIES OF CULPABILITY IN APPELLANT'S TRIAL AND THE TRIAL OF HIS CO-DEFENDANT, AND OTHERWISE ENGAGED IN IMPROPER ARGUMENT, AND TRIAL COUNSEL WAS INEFFECTIVE IN FAILING TO OBJECT THERETO.

(Doc. 8, PageID#: 435). The State filed a notice of supplemental authority (Doc. 8, PageID#: 448-450) and a responsive appellee brief. (Doc. 8, PageID#: 454-487). Addison, through counsel, filed a reply brief. (Doc. 8, PageID#: 488-496). On January 22, 2009, the state appellate court affirmed the judgment of the trial court. (Doc. 8, PageID#: 497-516). *State v. Addison*, 2009-Ohio-221.

On April 6, 2009, Addison, *pro se*, filed a motion for delayed appeal and notice of appeal to the Supreme Court of Ohio. (Doc. 8, PageID#: 517-550). The court granted the delayed appeal. (Doc. 8, PageID#: 551). In his Memorandum in Support of Jurisdiction, Addison asserted the following three propositions of law:

> PROPOSITION OF LAW I: THE TRIAL COURT ERRED IN FAILING TO GRANT DEFENDANT'S MOTION FOR ACQUITTAL, AND FINDING HIM GUILTY OF AGGRAVATED MURDER AND TWO COUNTS OF ATTEMPTED MURDER WHEN THE EVIDENCE WAS NOT LEGALLY SUFFICIENT TO SUPPORT THE JURY VERDICT, IN VIOLATION OF THE APPELLANT'S FIFTH AND FOURTEENTH AMENDMENT RIGHTS TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION.
>
> PROPOSITION OF LAW II: THE APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF HIS SIXTH AMENDMENT RIGHT TO THE UNITED STATES CONSTITUTION AND ARTICLE 1, SECTION 10 OF THE OHIO CONSTITUTION WHEN DEFENSE ATTORNEY FAILED TO OBJECT TO MISCONDUCT BY THE

STATE WHEREIN THE PROSECUTION INTRODUCED AND ARGUED INCONSISTENT THEORIES OF CULPABILITY IN THE TRIALS OF THE APPELLANT AND HIS CODEFENDANT, AND LATER FAILED TO REQUEST A LESSER INCLUDED OFFENSE OF VOLUNTARY MANSLAUGHTER AS WARRANTED.

PROPOSITION OF LAW III: THE TRIAL COURT ERRED IN VIOLATION OF APPELLANT'S RIGHTS UNDER THE OHIO AND UNITED STATES CONSTITUTIONS IN PERMITTING THE STATE TO INTRODUCE INADMISSIBLE HEARSAY EVIDENCE.

(Doc. 8, PageID#: 552-569). The State did not file a response. On November 4, 2009, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. 8, PageID#: 591). *State v. Addison*, 123 Ohio St.3d 1471, 2009-Ohio-5704.

**C. Application for Reopening**

While the Supreme Court of Ohio appeal was pending, Addison, *pro se*, filed an application to reopen his appeal with the state appellate court and raised the following assignment of error:

1. IT CONSTITUTED INEFFECTIVE ASSISTANCE OF COUNSEL WHEN TRIAL COUNSEL FAILED TO SECURE THE ASSISTANCE OF AN EXPERT, IN VIOLATION OF DEFENDANT-APPELLANT'S SUBSTANTIAL RIGHTS UNDER THE FIFTH, SIXTH, AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION, AND ARTICLE 1 SECTION 10 OF THE OHIO CONSTITUTION

(Doc. 8, PageID#: 592-604). The State filed an opposition. (Doc. 8, PageID#: 605-612). The state appellate court denied the application on June 10, 2009. (Doc. 8, PageID#: 613-619). *State v. Addison*, Ohio 8th Dist. App. No. 90642, 2009-Ohio-2704.

On July 27, 2009, Addison, *pro se*, filed a notice of appeal with the Supreme Court of Ohio. (Doc. 8, PageID#: 620-622). In his Memorandum in Support of Jurisdiction, he asserted the following proposition of law:

1. Appellant was denied the effective assistance of appellant counsel when counsel failed to present a genuine argument against trial counsel's failure to raise a legitimate claim of ineffective assistance in violation of appellants sixth and fourteenth amendment of the constitution article 1 sec, 10 of the Ohio Constitution.

(Doc. 8, PageID#: 623-633). The State waived their response. (Doc. 8, PageID#: 642). On September 30, 2009, the Supreme Court of Ohio dismissed the appeal as not involving any substantial constitutional question. (Doc. 8, PageID#: 643). *State v. Addison*, 123 Ohio St.3d 1410, 2009-Ohio-5031.

**D. Motion for New Trial**

On May 17, 2023, Addison, through counsel, filed a motion for leave to file a motion for a new trial in the trial court. (Doc. 8, PageID#: 644-773). The State filed a response in opposition (Doc. 8, PageID#: 774-803). Addison filed for leave to file a reply brief *instanter*. (Doc. 8, PageID#: 2159-2162). The State filed for leave to file a sur-reply *instanter*. (Doc. 8, PageID#: 2164-2170). The trial court denied the motion for leave to file a motion for a new trial on December 5, 2023, holding that Addison was not unavoidably prevented from discovering the evidence he relied on. (Doc. 8, PageID#: 2255-2259).

On January 3, 2024, Addison, through counsel, filed a notice of appeal with the Eighth District Court of Appeals. (Doc. 8, PageID#: 2260-2261). In his brief, Addison raised the following seven assignments of error:

ASSIGNMENT OF ERROR I: THE TRIAL COURT ABUSED ITS DISCRETION IN DENYING AARON ADDISON'S MOTIONS FOR LEAVE TO FILE A MOTION FOR A NEW TRIAL AS THE EVIDENCE PRESENTED MEETS THE REQUISITE STANDARD REQUIRED UNDER CRIM. R. 33.

A. ADDISON HAS DEMONSTRATED THAT HE WAS UNAVOIDABLY PREVENTED FROM DISCOVERING THE EVIDENCE WITHIN 120 DAYS AFTER THE TRIAL VERDICT.

B. ADDISON HAS DEMONSTRATED THAT THE MATERIALITY STANDARD UNDER CRIM. R. 33 HAS BEEN SATISFIED IN THIS CASE.

ASSIGNMENT OF ERROR II: THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO HOLD AN EVIDENTIARY HEARING, AS ADDISON ESTABLISHED UNAVOIDABLE PREVENTION AND THE AFFIDAVITS PRESENTED MEET THE CALHOUN STANDARD.

ASSIGNMENT OF ERROR III: THE TRIAL COURT ERRED IN REPLACING THE UNAVOIDABLE PREVENTION STANDARD OF CRIM. R. 33(B) WITH THE THIRD PETRO FACTOR.

ASSIGNMENT OF ERROR IV: THE TRIAL COURT ERRED IN CONSIDERING THE MERITS OF ADDISON'S CLAIMS WITHOUT GRANTING LEAVE.

ASSIGNMENT OF ERROR V: THE TRIAL COURT ERRED IN APPLYING AN IMPROPER STANDARD TO ASSESS ADDISON'S BRADY CLAIMS.

ASSIGNMENT OF ERROR VI: THE TRIAL COURT ERED FOR ASSIGNING SHONTIA HOWARD'S STATEMENT NO EVIDENTIARY VALUE AND FAILING TO CONSIDER IT IN ITS DETERMINATION OF WHETHER TO GRANT AN EVIDENTIARY HEARING.

ASSIGNMENT OF ERROR VII: THE TRIAL COURT ERRED IN RECUSING ITSELF FROM ADDISON'S CASE ABSENT PUBLICATION OF REASONING SUPPORTING ITS RECUSAL.

(Doc. 8, PageID#: 2278). The State filed a responsive appellee brief. (Doc. 8, PageID#: 2311-2354). Addison, through counsel, filed a reply brief. (Doc. 8, PageID#: 2355-2365). On December 12, 2024, the state appellate court affirmed the judgment of the trial court. (Doc. 8, PageID#: 2366-2388). *State v. Addison*, Ohio 8th Dist. App. No. 113533, 2024-Ohio-5805.

On January 27, 2025, Addison, through counsel, filed a notice of appeal to the Supreme Court of Ohio. (Doc. 8, PageID#: 2389-2390). In his Memorandum in Support of Jurisdiction, he asserted the following seven propositions of law:

Proposition of Law I: The trial court abused its discretion in denying Aaron Addison's Motion for Leave to File a Motion for a New Trial as the evidence

presented meets the requisite standard required under Crim. R. 33.

Proposition of Law II: The trial court abused its discretion in failing to hold an evidentiary hearing, as Addison established unavoidable prevention and the affidavits presented meet the Calhoun standard.

Proposition of Law III: The trial court erred in replacing the unavoidable prevention standard of Crim. R. 33(B) with the third Petro factor.

Proposition of Law IV: The trial court erred in considering the merits of Addison's claims without granting leave.

Proposition of Law V: The trial court erred in applying an improper standard to assess Addison's Brady claims.

Proposition of Law VI: The trial court erred for assigning Shontia Howard's statement no evidentiary value and failing to consider it in its determination of whether to grant an evidentiary hearing.

(Doc. 8, PageID#: 2391-2408). The State filed a memorandum in response. (Doc. 8, PageID#: 2409-2422). On April 15, 2025, the Supreme Court of Ohio declined to accept jurisdiction pursuant to S.Ct.Prac.R. 7.08(B)(4). (Doc. 8, PageID#: 2423). *State v. Addison*, 2025-Ohio-1283.

**E. Federal Habeas Petition**

Addison, *pro se*, filed a petition for writ of habeas corpus pursuant to 28 U.S.C.§2254 on April 14, 2026, by placing it in the prison mailing system. In his petition he raised the following four grounds for relief:

**GROUND ONE**: Denial of Due Process – Arbitrary Denial of leave to file Motion for NewTrial. Actual Innocence claim.

Supporting facts: Petitioner Aaron Oscar Addison was denied his rights under the Due Process Clause of the Fourteenth Amendment when the state trial court arbitrarily denied his motion for leave to file a motion for a new trial based on newly discovered evidence. The evidence includes affidavits and witness testimony establishing exculpatory information and Brady Violations. Gateway Innocence case

**GROUND TWO**: Brady Violations – Suppression of Exculpatory Evidence Brady v. Maryland

Supporting facts: The state suppressed material exculpatory evidence, including inducements provided to a witness and evidence identifying an alternate suspect, that if it was revealed during trial the outcome of the trial would have been favorable to the Petitioner. The cumulative effect of constitutional errors rendered the trial fundamentally unfair.

**GROUND THREE**: Ineffective Assistance of Counsel

Supporting facts: Trial and Appellate Counsel failure to investigate and present exculpatory evidence and failure to secure, obtain an [sic] ballistics expert to refute state's theory of trajectory. Forensic and logical improbability, eye witness seen [sic] another Suspect commit crime

**GROUND FOUR**: Violation of the Right to present a Complete Defense and violation of the Sixth and 14 Amendments by replacing the unavoidable Prevention Standard

Supporting facts: The trial court violated Petitioner's constitutional rights under the Sixth and Fourteenth Amendments by refusing to consider the full substance of Shontia Howard's Statement and assigning it no evidentiary value and trial and Appellate court erred in replacing the unavoidable prevention standard of Criminal Rule 33(B) with the third Petro Factor

(Doc. 2, PageID#: 7-11).

## IV. THE PETITION IS UNSIGNED AND SHOULD BE DISMISSED

As an initial matter, the copy of the Petition that Respondent has appears to be unsigned. (Doc. 2, PageID#: 19). Rule 2(c)(5) of the Rules Governing Habeas Corpus Cases requires that the Petition be "signed under penalty of perjury by the petitioner or by a person authorized to sign it for the petitioner under 28 U.S.C. § 2242." Addison's failure to sign the petition makes it subject to dismissal. *See McCrae v. Warden*, 2018 U.S. Dist. LEXIS 175690 at *6-7 (S.D. Ohio Oct. 12, 2018) (citing cases), *adopted in* 2018 U.S. Dist. LEXIS 190735 (S.D. Ohio Nov. 7, 2018), *certificate of appealability denied in McCrae v. Robinson*, 2019 U.S. App. LEXIS 40395 (6th Cir. 2019). Addison's petition should be dismissed.

## V. THE PETITION IS BARRED BY THE STATUTE OF LIMITATIONS

### A. Addison's petition is barred by the AEDPA statute of limitations

Addison's petition, filed over a decade after his conviction, is barred by the AEDPA statute of limitations. The AEDPA created a one-year limitations period for habeas petitions brought by individuals challenging their state-court convictions. 28 U.S.C. §2244(d); *McCray v. Vasbinder*, 499 F.3d 568, 571 (6th Cir. 2007). Under 28 U.S.C. §2244(d)(1), the limitations period begins to run from the latest of four events:

> (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
>
> (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

Cases become final on direct review for purposes of §2244(d)(1)(A) when certiorari is denied or time to file a certiorari petition expires. *Lawrence v. Florida*, 549 U.S. 327, 333 (2007) (*citing Clay v. United States*, 537 U.S. 522, 527-28, n.3 (2003)).

The Supreme Court of Ohio declined to accept Addison's appeal on November 4, 2009. (Doc. 8, PageID#: 591). Addison had ninety days to file a petition for certiorari, but he failed to do so. The ninety-day period expired on February 2, 2010, and AEDPA's statute of limitations began to run the next day. The statute of limitations expired on February 3, 2011, over fifteen years before Addison filed the instant petition. Addison's petition is untimely.

**B. Statutory tolling cannot render Addison's petition timely**

The running of the AEDPA limitations period may be tolled during the pendency of a "properly filed" application for state post-conviction relief or other collateral relief with respect to the pertinent judgment or claims under 28 U.S.C. §2244(d)(2). *Artuz v. Bennett,* 531 U.S. 4, 8-9 (2000). When a post-conviction motion is determined to be untimely by state courts, it is not properly filed, and it may not provide statutory tolling under §2244(d)(2). *Allen v. Siebert*, 552 U.S. 3, 7 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

Addison filed an Application to Reopen his appeal, but that was decided within the time that his appeal to the Supreme Court of Ohio was decided. Long after the statute of limitations expired, Addison filed a motion for leave to file a motion for a new trial. (Doc. 8, PageID#: 644). The state courts denied Addison leave, finding that he was not unavoidably prevented from timely filing a motion. *State v. Addison*, 2024-Ohio-5805. Addison's 2023 filing does not toll the already expired statute of limitations.

Addison's untimely filings do not revive the statute of limitations that has already expired. *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("The tolling provision does not… 'revive' the limitations period (*i.e.*, restart the clock at zero); it can only serve to pause a clock that has not yet fully run. Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations."). "When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of §2244(d)(2). Moreover, collateral petitions or other post-conviction pleadings filed after the statute of limitations has expired do not toll the limitations period." *Pryor v. Erdos*, No. 5:20CV2863, 2021 U.S. Dist. LEXIS 178785 at *13 (N.D. Ohio, Aug. 17, 2021) (internal citations omitted). When a post-conviction motion is determined to be untimely

by state courts, it is not properly filed, and it may not provide statutory tolling under §2244(d)(2). *Allen v. Siebert*, 552 U.S. 3, 7 (2007); *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005).

Addison's petition is untimely and should be dismissed.

**C. Addison cannot establish entitlement to equitable tolling**

The doctrine of equitable tolling allows the court to toll a statute of limitations and "[t]ypically…applies only when a litigant's failure to meet a legally-mandated deadline unavoidably arose from circumstances beyond that litigant's control." *Jurado v. Burt*, 337 F.3d 638, 642 (6th Cir. 2003) (quoting *Graham-Humphreys v. Memphis Brooks Museum of Art, Inc.*, 209 F.3d 552, 560- 61 (6th Cir. 2000)). The purpose underlying the one-year limitation period, to curb undue delays and abuses of the writ of habeas corpus, is served by the statute of limitations. *Dunlap v. United States*, 250 F.3d 1001, 1006 (6th Cir. 2001). As a result, "'[a]bsent compelling equitable considerations, a court should not extend limitations by even a single day.'" *Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) (quoting *Graham-Humphreys*, 209 F.3d 552 at 561).

**1. No extraordinary circumstance preventing diligent presentation**

Equitable tolling should only be granted "sparingly" *Solomon v. United States*, 467 F.3d 928, 933 (6th Cir. 2006), and may only be available when a petitioner can demonstrate "1) that he has been pursuing his rights diligently, and 2) that some extraordinary circumstance stood in his way." *Pace*, 544 U.S. at 418. Diligence can be shown by prompt action on the part of the petitioner as soon as he is in a position to realize that he has an interest in challenging his conviction. *Johnson v. United States*, 544 U.S. 295, 308 (2005). The Supreme Court reaffirmed *Pace's* two-pronged equitable tolling test in *Holland v. Florida,* 560 U.S. 631, 649 (2010). Neither a petitioner's *pro se* status nor his ignorance of the law will justify equitable tolling of the limitations period for filing a federal habeas petition. *Fisher v. Johnson*, 174 F.3d 710, 714-15 (5th Cir. 1999); see also *United*

*States v. Baker*, 197 F.3d 211, 218 (6th Cir. 1999). Finally, Addison bears the burden of establishing entitlement to equitable tolling. *Griffin v. Rogers*, 308 F.3d 647, 653 (6th Cir. 2002); *McClendon v. Sherman*, 329 F.3d 490, 492 (6th Cir. 2003).

Addison does not allege any equitable tolling and instead appears to suggest that his petition is timely filed. As the state courts found, Addison was not diligent in presenting his claims there and has similarly failed to show equitable tolling to save his tardy petition.

**2. No showing of actual innocence equitable tolling**

The Supreme Court has determined that the AEDPA statute of limitations may be subject to equitable tolling for a showing of actual innocence under the "miscarriage of justice" standard as set forth in *Schlup v. Delo*, 513 U.S. 298 (1995). *McQuiggin v. Perkins*, 569 U.S. 383 (2013). The *Perkins* Court held "to invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.' *Schlup*, 513 U.S. at 327." *Id.,* at 399 (internal citation omitted).

Such was already the existing law in this Circuit under *Souter v. Jones*, 395 F.3d 577 (6th Cir. 2005). To establish a credible gateway actual innocence showing, a habeas petitioner must "support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Souter,* 395 F.3d at 590 (citing *Schlup v. Delo,* 513 U.S. at 324). The Supreme Court in *Perkins* "stress[ed] once again that the *Schlup* standard is demanding. The gateway should open only when a petition presents 'evidence of innocence so strong that a court cannot have confidence in the outcome of the trial unless the court is also satisfied that the trial

was free of nonharmless constitutional error.' 513 U.S. at 316, 115 S. Ct. 851, 130 L. Ed. 2d 808." *McQuiggin,* 569 U.S. at 383.

Addison claims that he is actually innocent, but he has not presented any new evidence to support his allegation. Addison's petition is untimely and should be dismissed.

## VI. EXHAUSTION, FAIR PRESENTATION, AND WAIVER

### A. Standard

Before a state prisoner may seek a writ of habeas corpus in federal court pursuant to 28 U.S.C. §2254, he must exhaust his state court remedies by fairly presenting all of his constitutional claims to the highest state court and to all appropriate state courts prior to that. 28 U.S.C. §2254 (b), (c); *Picard v. Connor*, 404 U.S. 270, 275-76 (1971); *Pillette v. Foltz*, 824 F.2d 494, 497 (6th Cir. 1987); *Franklin v. Rose*, 811 F.2d 322, 325 (6th Cir. 1987). In Ohio, this includes direct and delayed appeal to the Ohio Court of Appeals and the Ohio Supreme Court. *Mackey v. Koloski,* 413 F.2d 1019 (6th Cir. 1969); *Allen v. Perini,* 424 F.2d 134, 140 (6th Cir. 1970). To fairly present habeas claims to the state courts, such claims must be presented at the first available opportunity. *Rust v. Zent*, 17 F.3d 155, 160-61 (6th Cir. 1994). The exhaustion requirement is satisfied if it is clear that the claims are procedurally barred under state law. *Gray v. Netherland*, 518 U.S. 152, 161-162 (1996).

When a habeas petitioner fails to obtain consideration of a claim by a state court, either due to his 1) failure to fairly raise that claim before the state courts while state remedies are still available, or 2) noncompliance with a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally defaulted and may not be considered by the federal court on habeas review. *Wainwright v. Sykes,* 433 U.S. 72, 80, 84-87 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982); *Seymour v. Walker*, 224 F.2d 542, 550 (6th Cir. 2000).

As to the first type, a petitioner may procedurally default his constitutional claim by failing to fairly present it to the highest state court and to all appropriate state courts prior to that through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 847 (1999). In Ohio, "one complete round of the State's established appellate review process" means a defendant must timely and fairly present his on-the-record constitutional claim to the trial court, court of appeals and the Supreme Court of Ohio in direct review." *Caver v. Straub*, 349 F.3d at 346 (6th Cir. 2003) (*quoting Boerckel*, 526 U.S. at 845). The time limitations for filing state actions and the requirement that all available claims be asserted in the first such proceeding serve the state's interest in finality and in ensuring that claims are adjudicated at the earliest possible opportunity. Additionally, fair presentation requires that the federal ground be presented under the same constitutional theory and same facts that was presented to the state court. *Id.*; *Wong v. Money*, 142 F.3d 313,322 (6th Cir. 1998); *Williams v. Bagley*, 380 F.3d 932, 969 (6th Cir. 2004).

If, because of a procedural default, a habeas corpus petitioner can no longer present one or more of his federal claims to the state courts, he has waived those claims for purposes of federal habeas corpus review unless he can demonstrate cause for the procedural default and actual prejudice resulting from the alleged constitutional error. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, *supra*; *Wainwright v. Sykes*, *supra*; *United States v. Frady,* 456 U.S. 152, 168 (1982). Failure to raise constitutional issues at all on direct appeal is subject to the cause and prejudice standard of W*ainwright v. Sykes, supra*; *Murray v. Carrier*, *supra*; *Leroy v. Marshall,* 757 F. 2d 94 (6th Cir.) *cert. denied*, 474 U.S. 831 (1985).

As to the second type of default, a federal habeas corpus court is barred from hearing issues that could have been raised in the state courts, but were not, and now may not be presented to those state courts due to the state's enforcement of its rules of presentation. *Wainwright v. Sykes,* 433

U.S. 72 (1977); *Engle v. Isaac*, 456 U.S. 107 (1982). This type of procedural default is analyzed under the four-part analysis elucidated in *Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986), this Court must determine 1) whether the petitioner failed to comply with an applicable state procedural rule; 2) whether the state courts actually enforced the state procedural sanction; 3) whether the state procedural bar is an "adequate and independent" state ground on which the state can foreclose federal review; and 4) if the above are met, whether the petitioner has demonstrated "cause" and "prejudice."

Demonstrating "cause" requires showing that an objective factor external to the defense impeded counsel's efforts to comply with the State procedural rule. *Murray*, 477 U.S. at 488. Demonstrating "prejudice" requires showing a disadvantage "infecting" the trial with constitutional error. *Frady,* 456 U.S. at 168.

In extreme cases, a federal habeas court may hear a defaulted constitutional claim where cause and prejudice cannot be shown if the petitioner shows that his conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is the conviction of one who is "actually innocent." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray*, 477 U.S. at 496. That is, the petitioner must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in the light of the new evidence. *Schlup v. Delo*, 513 U.S. 298 (1995).

**B. Application**

Assuming arguendo they are cognizable, Addison's second ground for relief is entirely procedurally defaulted and his third ground for relief is partially procedurally defaulted.

In his second ground for relief, Addison claims that the state failed to disclose exculpatory evidence. Addison first raised this claim in his motion for leave to file a motion for a new trial, but

his motion was denied because he failed to satisfy Ohio's requirement of unavoidable prevention. *State v. Addison*, 2024-Ohio-5805. Therefore, Addison's ground for relief was not fairly presented to the state courts.

In his third ground for relief, Addison claims that his trial counsel and appellate counsel were ineffective for 1) failing to investigate and 2) failing to obtain a ballistics expert. The only portion of Addison's claim that was presented to the state court was through his Application to Reopen his appeal where he alleged that appellate counsel should have raised a claim of ineffective assistance of trial counsel for failing to obtain a ballistics expert. *State v. Addison*, 2009-Ohio-2704. The remainder of Addison's ground for relief was not fairly presented to the state courts.

Therefore, absent a showing of cause or prejudice, Addison has procedurally defaulted his habeas ground due to his failure to fairly present it to the Ohio courts.

**C. No showing of cause or prejudice to excuse default**

Since the Ohio courts were denied the opportunity to pass upon these claims due to Addison's procedural defaults, he must demonstrate some external factor as cause for the default and prejudice to obtain merits review here. *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *Engle v. Isaac*, 456 U.S. 107 (1982); *Wainwright v. Sykes,* 433 U.S. 72 (1977)*; United States v. Frady,* 456 U.S. 152, 168 (1982). Prejudice does not occur unless the petitioner demonstrates that there is a "reasonable probability" that the outcome would have been different. *Mason*, 320 F.3d at 629.

Addison does not allege cause or prejudice to excuse his default. A fairly presented and valid claim of ineffective assistance of counsel *may* serve as cause sufficient to excuse a procedural default in federal habeas corpus. *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000); *Haliym v. Mitchell*, 492 F.3d 680,691 (6th Cir. 2007). As discussed, Addison has only argued that appellate counsel should have alleged ineffective assistance of counsel for failing to retain a ballistics expert.

In sum, Addison has not made a showing of cause or prejudice that would excuse his untimely, and defaulted grounds for relief.

**D. No miscarriage of justice to excuse default**

Finally, in extreme cases, a federal habeas court may hear a defaulted constitutional claim where cause and prejudice cannot be shown if the petitioner shows that his conviction is the result of a fundamental miscarriage of justice. A fundamental miscarriage of justice is the conviction of one who is "actually innocent." *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991); *Murray,* 477 U.S. at 496. Actual innocence means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 623 (1998). "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995). Addison must show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt in the light of the new evidence. *Id.*

Addison has not presented any new evidence to support actual innocence. As such, his untimely habeas grounds are also procedurally defaulted due to his unexcused failures to fairly present them to the Ohio courts.

**VII. <u>MERITS</u>**

**A. Standard of Review**

AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell,* 271 F.3d 652, 655-56 (6th Cir. 2001). AEDPA "dictates a highly deferential standard for evaluating state-court rulings which demands that state court decisions be given the benefit of the doubt." *Bell v. Cone,* 543 U.S. 447, 455 (2005) (citations omitted); see Wilkins v. Timmerman-Cooper, 512

F.3d 768, 774 (6th Cir. 2008).

Section 2254(d) states that an application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." §2254(d). "AEDPA deference applies to the state court's *decision*, not its reasoning." *Holland v. Rivard*, 800 F.3d 224, 236 (6th Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 131 (2011)). Thus, under the AEDPA, a federal habeas court may grant a writ of habeas corpus if the state court arrives at a conclusion or result that is contrary to a decision reached by the Supreme Court on a question of law or in a case that has a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); *Harrington*, 562 U.S. at 103 (2011). Alternatively, the writ may be granted if the state court unreasonably applied established federal law. *Id.* When determining whether the state court's application of clearly established federal law was unreasonable, the federal court should ask whether that application was objectively unreasonable. *Id.* Additionally, the Sixth Circuit held that to be overturned, a state court's application of Supreme Court precedent must be objectively unreasonable, and that findings of fact of the state courts are presumed to be correct. *Bailey*, 271 F.3d at 655-56. Petitioners have the burden of rebutting the presumption of correctness by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata,* 449 U.S. 539, 546 (1981); *Lundgren v. Mitchell,* 440 F.3d 754, 763 (6th Cir. 2006).

There can be no "unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by this Court." *Harrington,* 562 U.S. at 101 (*quoting Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (internal quotation marks omitted); *Woods v. Donald*, 575 U.S. 312, 317 (2015). The Supreme Court has clarified that "[i]f this standard is difficult to meet, that is because it was meant to be." *Harrington*, 562 U.S. at 102.

**B. Grounds for Relief**

> **GROUND ONE**: Denial of Due Process – Arbitrary Denial of leave to file Motion for NewTrial. Actual Innocence claim.
>
> <u>Supporting facts</u>: Petitioner Aaron Oscar Addison was denied his rights under the Due Process Clause of the Fourteenth Amendment when the state trial court arbitrarily denied his motion for leave to file a motion for a new trial based on newly discovered evidence. The evidence includes affidavits and witness testimony establishing exculpatory information and Brady Violations. Gateway Innocence case

In his first ground for relief, Addison argues that the state trial court erred when it denied his motion for leave to file a motion for a new trial and claims that he is actually innocent. Addison's first ground for relief is not cognizable in federal habeas corpus.

*First*, "[n]othing in the Constitution requires a state to establish a system of postconviction review, and thus 'an infirmity in a state post-conviction proceeding does not raise a constitutional issue cognizable in a federal habeas petition.'" *Coney v. Tribley*, 2013 U.S. Dist. LEXIS 83287 at *39-40 (E.D. Mich., May 3, 2013) (*quoting Gee v. Groose*, 110 F.3d 1346, 1351-52 (8th Cir. 1997)).

"Post-conviction state collateral review is not a constitutional right, even in capital cases." *Statzer v. Marquis*, No. 1:18-cv-626, 2020 U.S. Dist. LEXIS 129854 at *9 (S.D. Ohio July 23, 2020) (citing cases), *adopted in* 2020 U.S. Dist. LEXIS 223521 (S.D. Ohio, Nov. 30,

2020). Therefore, claims of denial of due process and equal protection in collateral proceedings are not cognizable in federal habeas corpus. *Kirby v. Dutton*, 794 F.3d 245 (6th Cir. 1986). The Sixth Circuit has "consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (citing *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) and *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986)). "In conducting habeas review, this Court does not 'reexamine state-court determinations on state-law questions.'" *Lacy v. Fender*, No. 1:21-cv-00948, 2023 U.S. Dist. LEXIS 130410 at *11 (N.D. Ohio July 27, 2023) (*citing Estelle v. McGuire*, 502 U.S. 62, 68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991)).

*Second*, the United States Supreme Court has not recognized a freestanding claim of actual innocence in non-capital cases. *Gray v. MacKey*, 2025 U.S. App. LEXIS 30927 at *4 (6th Cir. 2025); *Hastings v. Berghuis*, 2017 U.S. App. LEXIS 28061 at *3 (6th Cir. 2017).

Addison's first ground for relief is not cognizable and should be dismissed and/or denied.

> **GROUND TWO**: Brady Violations – Suppression of Exculpatory Evidence
> Brady v. Maryland
>
> <u>Supporting facts</u>: The state suppressed material exculpatory evidence, including inducements provided to a witness and evidence identifying an alternate suspect, that if it was revealed during trial the outcome of the trial would have been favorable to the Petitioner. The cumulative effect of constitutional errors rendered the trial fundamentally unfair.

In his second ground for relief, Addison claims that the state failed to disclose exculpatory evidence pursuant to *Brady v. Maryland*, 373 U.S. 83 (1963). As previously discussed, Addison's second ground for relief is procedurally defaulted. It is also meritless. Addison raised a *Brady* claim in his motion for leave to file a motion for a new trial, which the state courts denied because Addison failed to comply with Ohio law.

In its opinion affirming the denial of the motion for leave, the state appellate court stated the following:

> [*P19] Next, Tewana's claims that she had a sexual relationship with one of the detectives that testified at trial and that she received $1,200 from Crime Stoppers for her statement to police. Addison asserts that this is favorable *Brady* material that would have changed the outcome of the trial.
>
> [*P20] In *Brady v. Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), the Supreme Court of the United States recognized that the prosecution has an affirmative duty to disclose evidence that is favorable to the accused and material to the accused's guilt or punishment. S*ee also Kyles v. Whitley*, 514 U.S. 419, 432, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995). That "duty encompasses impeachment evidence as well as exculpatory evidence," *Strickler v. Greene*, 527 U.S. 263, 280, 119 S. Ct. 1936, 144 L. Ed. 2d 286 (1999), and "it encompasses evidence 'known only to police investigators and not to the prosecutor.'" *Id.* at 280-281, quoting *Kyles* at 438. The *Brady* rule applies regardless of whether evidence is suppressed by the State willfully or inadvertently. *Strickler* at 282.
>
> [*P21] The Supreme Court has explained that evidence is favorable to the accused when it is exculpatory or impeaching. *Id.* at 281-282. And "favorable evidence is material, and constitutional error results from its suppression by the government, 'if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different.'" *Kyles* at 433, quoting *United States v. Bagley*, 473 U.S. 667, 682, 105 S. Ct. 3375, 87 L. Ed. 2d 481 (1985). A different result is reasonably probable "when the government's evidentiary suppression 'undermines confidence in the outcome of the trial.'" *Id.* at 434, quoting *Bagley* at 678. A defendant establishes a *Brady* violation "by showing that the favorable [but suppressed] evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles* at 434.
>
> [*P22] "It is well settled that a defendant is entitled to rely on the prosecution's duty to produce evidence that is favorable to the defense." *Bethel*, 2022-Ohio-783, ¶ 25; *see Kyles*, 514 U.S. at 432-433. A defendant seeking to assert a *Brady* claim therefore is not required to show that he could not have discovered suppressed evidence by exercising reasonable diligence. *Id., see Strickler*, 527 U.S. at 282-285. "We hold that when a defendant seeks to assert a *Brady* claim in an untimely or successive petition for postconviction relief, the defendant satisfies the 'unavoidably prevented' requirement contained in R.C. 2953.23(A)(1)(a) by establishing that the prosecution suppressed the evidence on which the defendant relies." *Id.* Because "'the "unavoidably prevented" requirement in Crim.R. 33(B) "'mirrors the "unavoidably prevented" requirement in R.C. 2953.23(A)(1),'" we must apply the same analysis when determining whether Addison met his burden here. *Id.* at ¶ 59, quoting *State v. Barnes*, 2018-Ohio-1585, ¶ 28 (5th Dist.).

[*P23] Ostensibly, Addison is asserting that Tewana's newly alleged relationship with one of the detectives who testified at trial and newly revealed Crime Stopper's payout was suppressed by the State and thus undermines the confidence in the outcome of the trial. We disagree.

[*P24] In Tewana's affidavit regarding the detective, she asserted that at trial she testified that "we were friends, but I did not disclose that we had a sexual relationship. [We] exchanged sex for money on several occasions between 2002 and 2006." Assuming, for the sake of argument only, that Tewana's claim is true, we find that this impeachment evidence would have no consequence on the outcome of the trial. First, we note that the detective Tewana is referring to was not the detective investigating Charles's murder. Second, the named detective offered no testimony about the murder or about Addison. The detective simply testified that he knew Tewana for approximately ten years and that he helped her transfer C.M.H.A. apartments, because she was being evicted, in exchange for providing information to the homicide detectives investigating Charles's death. He also testified that Tewana was a paid informant that he occasionally obtained information from about illegal drug activity occurring on C.M.H.A. property. This information came out during cross-examination, and prior to Tewana's testimony. Third, Tewana testified that she was not evicted and that she was not a paid informant; essentially, calling into question her credibility. Finally, the only evidence Tewana offered against Addison was that she observed his purple convertible in the area of the shooting, which Addison himself confirmed, in his statement to homicide detectives. Therefore, we cannot say that this impeachment evidence, if true, put the whole case in such a different light as to undermine confidence in the verdict.

[*P25] Lastly, Tewana asserted in her affidavit that "[i]n cooperating with the police investigation, I received $1,200 from Crime Stoppers for my statement. I did not disclose this during my trial testimony." Addison claims that the State has a duty to disclose such information. The State argues that Crime Stoppers is an independent organization and is not an arm of the government subject to *Brady*.

[*P26] The only case addressing Crime Stoppers in this context is *State v. Simmers*, 1999 Wash.App. LEXIS 915, * 12 (May 24, 1999). The *Simmers* Court held that "the State had no *Brady* obligation to seek out and disclose the Crime Stoppers information[.]" The court recognized that based on the record, informants are anonymous, and merely receive a number, and even when they are paid out on their tips, they are never associated with that number. As such, even if the State was related to Crime Stoppers, it still would have had no ability to discover the names of individual informants. *See id.* at * 11. Therefore, even if Crime Stoppers of Cuyahoga County were run by law enforcement, the tips received are anonymous. Neither law enforcement nor Crime Stoppers would be aware of the anonymous tipster's name unless the tipster wished to reveal themselves. Finally, "*Brady* does not apply to materials that are not 'wholly within the control of the prosecution.'" *State v. Finley*, 2024-Ohio-2636, ¶ 36 (8th Dist.), quoting *United States v. Delgado*, 350 F.3d 520, 527 (6th Cir. 2003), quoting *Coe v. Bell*, 161 F.3d 320, 344 (6th

Cir. 1998). Nothing in the affidavit states that the State or the police were aware of the Crime Stoppers payout, if it happened at all.

[*P27] Although a *Brady* violation can form the basis for a motion for leave to file a motion for a new trial, it is not automatic. Addison has not made a prima facie showing of a *Brady* violation here. Therefore, the trial court did not abuse its discretion when it did not grant leave based on Tewana's affidavit.

Unsworn Statement of Shontia Howard

[*P28] The second document relied upon by Addison is an unsworn statement made to Cleveland Police homicide detectives by Shontia Howard ("Shontia") on September 14, 2021. In this statement, Shontia claims that Addison, her boyfriend at the time, was not the killer, but rather Kenneth Smith a.k.a. "Flynn," is the real killer. Shontia states that she was not truthful with police when she was originally interviewed and that she has always known that Addison was not involved but did not care at that time the murder occurred, even though she was pregnant with Addison's child at the time. She now alleges that (1) she observed "Flynn" with a shotgun a few minutes before the shooting; (2) "Flynn" told her he was about to shoot up Latrice's apartment; and (3) "Flynn" indirectly threatened her not to come forward several times after the murder. Shontia explained that she is coming forward now for her daughter, who is Addison's child. Shontia claimed that she always told her daughter that her father was not involved in the murder. She also stated that her daughter has a relationship with Addison.

[*P29] As we stated previously, a motion for leave must demonstrate that the evidence obtained constitutes non-*Brady* newly discovered evidence and that Addison was unavoidably prevented from discovering the evidence in a timely manner. *Smith*, 2024-Ohio-1360, at ¶ 47. "'[A] party is unavoidably prevented from filing a motion for a new trial if the party had no knowledge of the existence of the ground supporting the motion for a new trial and could not have learned of the existence of that ground within the time prescribed for filing the motion for a new trial in the exercise of reasonable diligence.'" *State v. Apanovitch*, 2020-Ohio-4217, ¶ 15 (8th Dist.), quoting *State v. Walden*, 19 Ohio App.3d 141, 19 Ohio B. 230, 483 N.E.2d 859 (10th Dist. 1984). The defendant bears the burden of demonstrating, by clear and convincing evidence, that he was unavoidably prevented from filing his motion within the time prescribed. *McFarland*, 2022-Ohio-4638, at ¶ 17 (8th Dist.), citing *Hubbard*, 2020-Ohio-2726, at ¶ 29 (8th Dist.). To meet this burden, the defendant must present "'more than a mere allegation that he was unavoidably prevented from discovering the evidence he seeks to introduce to support a new trial.'" *Hubbard*, quoting *Cowan*, 2020-Ohio-666, at ¶ 10 (8th Dist.).

[*P30] Here, we cannot say that Addison was unavoidably prevented from discovering Shontia's story. Shontia was Addison's girlfriend at the time of the murder, and she kept in contact with Addison throughout the investigation, trial, and after he was convicted and sentenced. On at least two occasions, she took their daughter to visit him in prison. Further, when Addison spoke with police after the murder, he maintained that him and

Shontia were together when he warned Latrice before the shooting, that he did not have a gun, and that he was at Shontia's apartment when the murder occurred. When Shontia was interviewed by police, she stated that her and Addison spoke with Latrice before the shooting and were together at her apartment when the murder occurred. Since the two were together before, during, and after the murder, then Addison would have observed "Flynn" when Shontia did, or could have learned what she witnessed in a reasonable time. Therefore, Addison has failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from obtaining this information from Shontia. Accordingly, the trial court did not abuse its discretion when it denied leave based on Shontia's statement.

Affidavit of Eureka Barbour

[*P31] The third document relied upon by Addison is an affidavit from Eureka Barbour ("Eureka") where she attested that (1) she witnessed a group of young people across the street from Latrice's apartment; (2) she was on the phone with Addison and could hear the mother of his child, TT, talking in the background around the time of the shooting; (3) she heard the gunshots and observed the group of men running; and (4) Addison did not socialize with the codefendant. She indicated that she is the mother of one of Addison's children and stated that the police never interviewed her.

[*P32] Again, we cannot say that Addison was unavoidably prevented from learning of this witness and her information in a timely fashion. Obviously, if Addison was speaking with Eureka when the murder occurred, he would have informed police at the time of the murder since this was a potential alibi witness. Eureka was the mother of one of his children and therefore known to him. Finally, Eureka does not attest to why she did not come forward until February 2023. Therefore, Addison has failed to demonstrate by clear and convincing evidence that he was unavoidably prevented from obtaining this information from Eureka. Accordingly, the trial court did not abuse its discretion when it denied Addison's motion for leave based on Eureka's affidavit.

Affidavit of Investigator Tom Pavish

[*P33] The fourth document submitted by Addison, was an affidavit of defense investigator Tom Pavish ("Pavish") wherein he stated that he interviewed Takeshea Humphrey ("Humphrey") in 2018 and she claimed that (1) Kenneth Smith was the shooter; (2) she witnessed him jumping off Latrice's balcony with a gun in hand; and (3) Addison and Wilmore did not get along. Humphrey, who is now deceased, never provided a statement to police at the time of the murder.

[*P34] In order for Addison to prove that a new trial is warranted on the basis of newly discovered evidence, such evidence must be admissible in the new trial. *State v. Vess*, 2011-Ohio-3118, ¶ 38 (6th Dist.); *State v. Williams* 43 Ohio St.2d 88, 330 N.E.2d 891 (1975), at paragraph one of the syllabus (requiring that hearsay evidence meet one of the hearsay exceptions to allow it to support a motion for a new trial). Humphrey's statements are inadmissible hearsay, and Addison provides no exception that would allow

> Humphrey's statements into evidence. Furthermore, Addison did not demonstrate that he was unavoidably prevented from obtaining this information in a timely manner. Accordingly, the trial court did not abuse its discretion when the court denied Addison's motion for leave based on the affidavit of Pavish.
>
> Letter from Prosecutor
>
> [*P35] Finally, Addison attached a letter from the prosecutor to the homicide detective, identifying a potential suspect that the prosecutor wanted investigated. Addison claims that this information was withheld from defense; however, Addison's claims are patently false. A review of the record reveals, that on February 15, 2007, the prosecutor described, on the record, the steps law enforcement were taking to interview the potential suspect that Addison — himself — identified to police and claimed was present the day of the murder with a 9 mm handgun. Hence, Addison has failed to demonstrate by clear and convincing evidence that the prosecution suppressed evidence. Accordingly, the trial court did not abuse its discretion when the court denied Addison's motion for leave based on the letter.
>
> [*P36] In sum, we find that Addison failed to submit documents that "on their face" support Addison's claim that the State suppressed the evidence or that he was unavoidably prevented from timely discovering the grounds for his motion so as to entitle him to a hearing on his motion for leave. Therefore, the trial court did not abuse its discretion when it denied Addison's motion for leave without hearing.
>
> [*P37] Accordingly, assignments of error one through six are overruled.

*State v. Addison*, 2024-Ohio-5805, ¶¶19-37.

Addison does not explain how the state appellate court's decision is unreasonable under AEDPA. The state appellate court properly identified *Brady* and applied it to the facts of the case. Moreover, a "habeas court does not sit as a second trial court or a tertiary level of appeal." *Noling v. Bradshaw*, 2008 U.S. Dist. LEXIS 7650 at fn. 7 (N.D. Ohio Jan. 31, 2008) (*citing Allen v. Mooris*, 845 F.2d 610, 614 (6th Cir. 1988)).

"The materiality of *Brady* evidence depends almost entirely on the value of the undisclosed evidence relative to the other evidence produced by the state." *Eakes v. Sexton*, 592 Fed.Appx. 422, 427 (6th Cir. 2014) (*citing United States v. Sipe*, 388 F.3d 471, 478 (5th Cir. 2004)). And

"evidence impeaching the testimony of a witness whose account is strongly corroborated by additional evidence supporting a guilty verdict" is not material. *Id*. at 428.

The state appellate court held that Addison failed to establish a prima facie showing of a *Brady* violation and Addison has not shown otherwise. Addison's second ground for relief is procedurally defaulted, meritless, and should be dismissed and/or denied.

**GROUND THREE**: Ineffective Assistance of Counsel

> Supporting facts: Trial and Appellate Counsel failure to investigate and present exculpatory evidence and failure to secure, obtain an [sic] ballistics expert to refute state's theory of trajectory. Forensic and logical improbability, eye witness seen [sic] another Suspect commit crime

In his third ground for relief, Addison claims that his trial and appellate counsel were ineffective for failing to investigate and failing to secure a ballistics expert. Although somewhat muddled, Respondent addresses this claim assuming that Addison has alleged that appellate counsel should have raised a claim of trial counsel's ineffective assistance of counsel. Addison's ground for relief is partially procedurally defaulted and meritless.

Addison's ineffective assistance of trial counsel claim in his direct appeal challenged counsel's failure to request a jury instruction and counsel's failure to object to the prosecutor's arguments. *See State v. Addison*, 2009-Ohio-221. In his Application to Reopen his appeal, Addison argued "that his appellate counsel should have argued that trial counsel was ineffective for not calling an expert witness on ballistics." *State v. Addison*, 2009-Ohio-2704, ¶1. Contrary to Addison's position in his Petition, it does not appear that he raised this claim of ineffective assistance of trial counsel in his motion for leave to file a motion for a new trial or in the subsequent appeal. (Doc. 2, PageID#: 10).

The clearly established Supreme Court precedent for a claim of ineffective appellate counsel is *Strickland v. Washington*, 466 U.S. 668 (1984). *McFarland v. Yukins*, 356 F.3d 688,

699 (6th Cir. 2004). A criminal defendant is entitled to effective assistance of counsel on direct appeal of right, just as he is at trial. *Evitts v. Lucey*, 469 U.S. 387 (1985); *Penson v. Ohio*, 488 U.S. 75 (1988). The habeas court "assess[es] the strength of the claim appellate counsel failed to raise." *Wilson v. Parker*, 515 F.3d 682, 707 (6th Cir. 2008). The failure to raise an issue on appeal constitutes ineffective assistance of appellate counsel "[g]enerally only when ignored issues are clearly stronger than those presented…" *Smith v. Robbins*, 528 U.S. 259, 288 (2000).

In sum, "[c]ounsel's failure to raise an issue on appeal could only be ineffective assistance if there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland* 356 F.3d at 699, citing *Greer v. Mitchell,* 264 F.3d 663, 676 (6th Cir. 2001); see also *McMeans v. Brigano*, 228 F.3d 674, 682 (6th Cir. 2000). As the court in *McFarland* explained, "[i]f there is a reasonable probability that [the defendant] would have prevailed on appeal had the claim been raised, we can then consider whether the claim's merit was so compelling that appellate counsel's failure to raise it amounted to ineffective assistance of appellate counsel." *McFarland,* 356 F.3d at 700. Thus, a claim appellate counsel could have, but did not, raise cannot form the basis of an ineffective assistance of counsel claim unless the claim had a reasonable probability of success at the time it could have been raised to have changed the result of the appeal. *Id.*, at 699-700.

The state appellate court rejected Addison's argument that appellate counsel should have raised a claim of ineffective assistance of trial counsel for failing to obtain a ballistics expert. Specifically, the court stated the following:

> [*P1] On April 20, 2009, the applicant, Aaron Addison, applied pursuant to App.R. 26(B), to reopen this court's judgment in *State of Ohio v. Aaron Addison*, Cuyahoga App. No. 90642, 2009 Ohio 221, in which this court affirmed his convictions and sentences for aggravated murder, two counts of attempted murder, and having a weapon under disability. Addison argues that his appellate counsel should have argued that trial counsel was ineffective for not calling an expert witness on ballistics. On May 22, 2009, the State

of Ohio filed its brief in opposition. For the following reasons, this court denies the application.

[*P2] In order to establish a claim of ineffective assistance of appellate counsel, the applicant must demonstrate that counsel's performance was deficient and that the deficient performance prejudiced the defense. *Strickland v. Washington* (1984), 466 U.S. 668, 80 L.Ed.2d 674, 104 S.Ct. 2052; *State v. Bradley* (1989), 42 Ohio St.3d 136, 538 N.E.2d 373, cert. denied (1990), 497 U.S. 1011, 110 S. Ct. 3258, 111 L. Ed. 2d 768.

[*P3] In *Strickland*, the United States Supreme Court ruled that judicial scrutiny of an attorney's work must be highly deferential. The Court noted that it is all too tempting for a defendant to second-guess his lawyer after conviction and that it would be all too easy for a court, examining an unsuccessful defense in hindsight, to conclude that a particular act or omission was deficient. Therefore, "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Strickland*, 104 S.Ct. at 2065.

[*P4] Specifically, in regard to claims of ineffective assistance of appellate counsel, the United States Supreme Court has upheld the appellate advocate's prerogative to decide strategy and tactics by selecting what he thinks are the most promising arguments out of all possible contentions. The court noted: "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." *Jones v. Barnes* (1983), 463 U.S. 745, 77 L.Ed.2d 987, 103 S.Ct. 3308, 3313. Indeed, including weaker arguments might lessen the impact of the stronger ones. Accordingly, the Court ruled that judges should not second-guess reasonable professional judgments and impose on appellate counsel the duty to raise every "colorable" issue. Such rules would disserve the goal of vigorous and effective advocacy. The Supreme Court of Ohio reaffirmed these principles in *State v. Allen*, 77 Ohio St.3d 172, 1996 Ohio 366, 672 N.E.2d 638.

[*P5] Moreover, even if a petitioner establishes that an error by his lawyer was professionally unreasonable under all the circumstances of the case, the petitioner must further establish prejudice: but for the unreasonable error, there is a reasonable probability that the results of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. A court need not determine whether counsel's performance was deficient before examining prejudice suffered by the defendant as a result of alleged deficiencies.

[*P6] Additionally, appellate review is strictly limited to the record. *The Warder, Bushnell & Glessner Co. v. Jacobs* (1898), 58 Ohio St. 77, 50 N.E. 97; *Carran v. Soline Co*. (1928), 7 Ohio Law Abs. 5 and *Republic Steel Corp. v. Sontag* (1935), 21 Ohio Law Abs. 358. Thus, "a reviewing court cannot add matter to the record that was not part of the trial court's proceedings and then decide the appeal on the basis of the new matter. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 377 N.E.2d 500. Nor can the

> effectiveness of appellate counsel be judged by adding new matter to the record and then arguing that counsel should have raised these new issues revealed by the newly added material." *State v. Moore*, 93 Ohio St.3d 649, 650, 2001 Ohio 1892, 758 N.E.2d 1130. "Clearly, declining to raise claims without record support cannot constitute ineffective assistance of appellate counsel." *State v. Burke*, 97 Ohio St.3d 55, 2002 Ohio 5310, P10, 776 N.E.2d 79.
>
> [*P7] Addison's argument is that the state's expert witness was less than compelling. He often seemed confused and unaware of many of the facts of the incident. It also seems that the fatal projectile had an unusual trajectory. Given this uncertainty, Addison argues that a defense expert witness would necessarily have helped clear the confusion and exonerate Addison. Therefore, trial counsel must have been ineffective for not retaining and calling an expert witness.
>
> [*P8] However, Addison does not show in the record what the expert witness would have said. Addison does not show a proffer and, indeed, indicates that such is not possible because trial counsel did not contact an expert. Without some scintilla of evidence in the record as to what the expert would have testified, all appellate counsel could have done was speculate on what such testimony would have been. That is insufficient for making an appellate argument, and appellate counsel properly rejected an argument without foundation in the record.
>
> [*P9] Accordingly, this court denies the application.

*State v. Addison*, 2009-Ohio-2704, ¶¶ 1-9.

Addison does not explain how the state appellate court's decision is unreasonable under AEDPA. Rather, the state appellate court properly applied *Strickland* and held that Addison's claim was based on speculation. Speculation does not ordinarily satisfy the *Strickland* standard. *See Guysinger v. Warden, Noble Corr. Inst.*, Case No. 2:19-CV-774, 2019 U.S. Dist. LEXIS 203816 at *28 (S.D. Ohio Nov. 25, 2019) (*citing Jackson v. Bradshaw*, 681 F.3d 753, 765 (6th Cir. 2012), *adopted in* 2020 U.S. Dist. LEXIS 27044 (S.D. Ohio Feb. 18, 2020). *See also Baker v. Stoddard*, Case No. 2:12-CV-12068, 2016 U.S. Dist. LEXIS 58480 at *15 (E.D. Mich. May 3, 2016) (*citing Hodge v. Haberlin*, 579 F.3d 627, 650 (6th Cir. 2009) ("An ineffective assistance of counsel claim for failure to investigate must be based upon more than mere speculation that further investigation would have been beneficial."). Notably, defense counsel raised the issue of

retaining a ballistics expert prior to trial but expressed doubt whether Addison would be willing to extend his speedy trial waiver. (Doc. 8, PageID#: 2531-33).

Addison's third ground for relief is partially procedurally defaulted, meritless, and should be dismissed and/or denied.

> **GROUND FOUR**: Violation of the Right to present a Complete Defense and violation of the Sixth and 14 Amendments by replacing the unavoidable Prevention Standard
>
> Supporting facts: The trial court violated Petitioner's constitutional rights under the Sixth and Fourteenth Amendments by refusing to consider the full substance of Shontia Howard's Statement and assigning it no evidentiary value and trial and Appellate court erred in replacing the unavoidable prevention standard of Criminal Rule 33(B) with the third Petro Factor

In his final ground for relief, Addison claims that the state trial court erred by not fully considering a statement he presented in support of his motion for leave to file a motion for a new trial. Addison's ground for relief is not cognizable in habeas corpus.

As previously discussed, the Sixth Circuit has "consistently held that errors in post-conviction proceedings are outside the scope of federal habeas corpus review." *Cress v. Palmer*, 484 F.3d 844, 853 (6th Cir. 2007) (*citing Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) and *Kirby v. Dutton*, 794 F.2d 245, 246-47 (6th Cir. 1986)).

Addison's fourth ground for relief is not cognizable in habeas corpus. Even assuming the state court misapplied state law, that is not a claim for this Court to consider. It is also wrong; the state appellate court's thorough decision properly applied Ohio's Criminal Rule 33 standard. Addison's final ground for relief should be dismissed and/or denied.

## VIII. CONCLUSION

Based upon the aforementioned reasons, Respondent respectfully submits that the petition for writ of habeas corpus should be dismissed. Respondent's defenses as set forth in the Return of

Writ are governed by well-established federal precedent in the United States Supreme Court, as well as by the Sixth Circuit Court of Appeals. Because Respondent's defenses involve legal issues which can be resolved on the record without additional factual inquiry, there is no need for an evidentiary hearing. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Getsy v. Mitchell*, 495 F.3d 295, 310-311 (6th Cir. 2007) (*en banc*).

Likewise, no additional evidence is permitted in this case because "review under §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). Thus, clearly established Supreme Court precedent is that the state court judgment adjudicating the merits is required to be viewed in the context of both the record and the law as it existed at the time the court issued its decision. *Id*., at 181–82, 185; *Greene v. Fisher*, 565 U.S. 34, 38 (2011). The limitations in *Pinholster* are virtually jurisdictional and apply to prohibit expansion of the record and to preclude evidentiary hearings. *Moore v. Mitchell*, 708 F.3d 760, 780-84 (6th Cir. 2014).

Finally, no certificate of appealability should be issued regarding the untimely, defaulted, non-cognizable, and/or meritless claims presented in Addison's petition.

Respectfully submitted,

D. ANDREW WILSON
Ohio Attorney General

*/s/Katherine E. Mullin*
**KATHERINE E. MULLIN (0084122)**
Senior Assistant Attorney General
Criminal Justice Section
30 East Broad Street, 23rd Floor
Columbus, Ohio 43215
(614) 644-7233/844-208-2297 - fax
katherine.mullin@ohioago.gov

**CERTIFICATE OF SERVICE**

I hereby certify that a true and accurate copy of the foregoing *Respondent's Return of Writ and Bookmarked Appendix* has been electronically filed and has been served upon Petitioner Aaron Addison, Inmate No. A551556, Southern Ohio Correctional Institution, P.O. Box 45699, Lucasville, OH, 45699, via U.S. mail, postage prepaid, this 5th day of August 2026.

s/Katherine Mullin
KATHERINE MULLIN
Senior Assistant Attorney General